## H. & S. POGUE CO. v. FIDELITY & CASUALTY CO. OF NEW YORK.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1924.)

No. 3967.

**Insurance ☞425—Interior office robbery policy; watchman, after being bound, held not "on duty."**

A policy insuring owners of a department store against interior robbery, limited to "loss of property from within the premises while there are two or more adult persons present on duty therein," *held* not to cover a loss of property taken from the store after it was closed for the day, by persons unintentionally admitted by a watchman, who was then the only person on duty therein, and who was at once bound and blindfolded, as was another watchman, who later appeared and was admitted; there being at no time "two or more persons" who were "on duty" in the premises.

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Action at law by the H. & S. Pogue Company against the Fidelity & Casualty Company of New York. Judgment for defendant, and plaintiff brings error. Affirmed.

Province M. Pogue, of Cincinnati, Ohio (Pogue, Hoffheimer & Pogue and Oliver S. Bryant, all of Cincinnati, Ohio, on the brief), for plaintiff in error.

Sanford A. Headley, of Cincinnati, Ohio (Buchwalter, Headley & Smith and Harry Neal Smith, all of Cincinnati, Ohio, on the brief), for defendant in error.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

MACK, Circuit Judge. This is a writ of error from a judgment in favor of the defendant in an action to recover upon a policy of insurance known as "interior office robbery policy." There is no dispute as to the facts; the question resolves itself into an interpretation of the policy, which, subject to certain general provisions, covers "all loss by robbery of property from within the premises occurring at any time during the hours beginning at 7 a. m. and ending at 12 midnight." The general provisions, so far as pertinent here, read as follows:

"1. Robbery, within the meaning of this policy is limited to a felonious and forcible taking of property—(a) By violence inflicted upon the person or persons in the actual care and custody of the property at the time; or (b) by putting such person or persons in fear of violence; or (c) by an overt feloneous act committed in the presence of such person or persons and of which they were actually cognizant at the time; or (d) from the person or direct care or custody of a custodian who, while on duty within the premises, has been killed or rendered unconscious by injuries inflicted maliciously."

"4. Custodian, within the meaning of this policy, is limited to either the assured or a person in the assured's employ not less than seventeen years of age and not over sixty-five years of age, and authorized by the assured to have in his actual care and custody property covered under this policy."

"20. The insurance provided by this policy attaches specifically as stated below in sections (a) and (b) respectively, and, subject to such limits, which shall not be deemed cumulative, the total sum insured and the limit of the total liability of the company under the policy is fifteen thousand $00/000$ dollars.

"(a) In the amount of $nothing to the loss of property from within the premises, while there is at least one adult person present on duty therein;

"(b) In the amount of $15,000, to the loss of property from within the premises, while there are two or more adult persons present on duty therein."

The plaintiff operated a large department store in the city of Cincinnati. A little after 5 o'clock on a Sunday afternoon, one Collins, who was on duty in the store as night watchman, opened one of the outer doors in response to a ring, believing that he was to accept a special delivery letter. He was immediately covered with a revolver, blindfolded, and taken first to the basement of the building, then to the first floor, where he was tied to a chair and held until released by the police about 11 o'clock on the same night.

Shortly before 7 p. m., one Majoesky, another night watchman, came to the store and knocked to be admitted. The burglars let him in. They covered him with a revolver, and bound and blindfolded him. Shortly thereafter he was taken by his captors to the elevator and compelled to run it to the sixth floor and then back again. He was also forced to light, and later to turn off, the show window lights. During the evening both watchmen heard several explosions. Considerable sums were taken by the burglars from two safes, one of which was in the basement, and the other in an office on the sixth floor, and two dress suit cases were also stolen.

Both watchmen were over 65 years of age. Their duty was to patrol the building, punch the various time clocks at stated periods, turn on the lights in the show window at dark, and extinguish them, care for and look after the store after the hours of closing and before the hours of opening, and to do the usual and ordinary work of watchmen in such establishments. Majoesky's hours were from 8 p. m. on. But on the

night of the robbery he happened to come to the store shortly before 7, solely to use the toilet and to leave his overcoat there while he went to a picture show. Neither watchman knew where the money that was stolen was, or how much, if any, money was in the store:

The defendant denies liability for the loss on several grounds:

First, it is contended that the property, if in the care and custody of any one at the time it was stolen, was in the care and custody of the watchmen, who were over 65 years of age, and consequently were disqualified to act as custodians under paragraph 4 of the policy. The plaintiff, in reply, contends that a person in the actual care and custody of the property, within the meaning of the policy, need not be a "custodian" as technically defined in the policy.

In the second place, defendant contends that the watchmen, having no knowledge as to where the money was kept, or how much, or if any there was, were not in the actual care and custody of the property, as required by paragraph 1 of the policy.

Thirdly, it is contended there is no liability, because the loss did not occur "while there are [were] two or more adult persons present on duty therein." As the last defense is, in our judgment, clearly established, it is unnecessary to consider the other two. On this point we quote, with full concurrence, from Judge Hickenlooper's opinion, as follows:

"As above noted, section 20 of the general provisions provides that the insurance provided by this policy shall not attach if there be but one adult person 'present on duty' in the premises at the time the loss is suffered. If the very apparent purpose of this provision be taken into consideration, another insurmountable obstacle to recovery would be presented. 'Present on duty' includes, not only physical or bodily presence at the place, but a certain amount of freedom for the performance of duties. One wholly unconscious, or wholly deprived of liberty of action, could scarcely be held to be present on duty, although perhaps bodily present. The entrance was effected at about 5:10 in the afternoon, when there was but one watchman there. He was at once bound and blindfolded and tied to a chair in the basement. The other watchman did not appear until 6:45 p. m., when he likewise was bound and tied to a chair in another part of the store. At no time were there two employees of the plaintiff present at the store, who were possessed of freedom of movement or capable in the slightest degree of performing their regular duties. The very purpose of the requirement of the presence of two employés is that, if more than one be present, the chance of giving an alarm or securing the assistance of the police is thereby greatly increased; while one is being overcome, the other might possibly escape and bring help. This purpose is clearly defeated if the one has been wholly deprived of his freedom and volition before the other arrives.

"Without holding that the robbery took place when the entrance was first effected and the one watchman bound, it is clear that the plaintiff has failed in the performance of the duty placed upon it by paragraph 20, of keeping at least two adult persons present and on duty at all times, in order to claim for loss suffered."

Judgment affirmed.