S. Milkes, Trading as Tempter Food Shop, Appellee, v. United States Fidelity & Guaranty Company, Appellant.

Gen. No. 34,075.

66

Opinion filed April 22, 1930.

EUGENE P. KEALY and CHESTER E. LEWIS, for appellant.

DARROW, SMITH, CRONSON & SMITH, for appellee; MILTON D. SMITH, WILLIAM L. CARLIN and WALTER R. TITZEL, JR., of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This is a suit on an insurance policy indemnifying the plaintiff against the loss by robbery within the premises designated in the policy under certain definitions and conditions contained in the policy. The case was tried without a jury and the court found in favor of appellee and entered judgment for $750, from which this appeal is taken.

The property taken was money that had been placed in a strong box in a desk in the premises in question. The policy provides that "premises" as used in this policy, shall mean the interior of the portion of the building occupied solely by the assured in conducting his business. One of the provisions of the policy lim-

iting liability is contained in the so-called "declarations," reading as follows: "(Item 4) Section (E). On property specified in Item 8 from within the premises, while at least one custodian is on duty therein $1,000." Item 8 includes money in the property insured.

One of the definitions of "custodian," as used in the policy and applicable to the facts of the case, is:

"(4) Any person not less than seventeen nor more than sixty-five years of age, who is in the regular employ of the assured and duly authorized by him to act as paymaster, messenger, cashier, clerk or sales person, and while so acting to have the care and custody of the property covered thereby."

Appellee operated a delicatessen store at the place designated in the policy on the first floor of a two-story building. One Weinrich was one of his employees. His usual duties were to prepare food stuffs and, as testified to, on occasions he assisted in the sale of them, when he placed the money in the cash register. There was some contradictory evidence as to his acting as salesman and whether his duties brought him within the definition aforesaid of custodian. We deem it unnecessary to discuss the evidence on that point, for assuming that he was a custodian we think there can be no recovery if, as we think, it cannot be said from the undisputed evidence that he was on duty within the premises as such custodian at the time of the robbery, as required in section E above quoted.

No question arises but that the robbery took place within the premises and that the property taken was such as required the presence of the custodian on duty within the premises at that time.

The undisputed facts upon which the question depends are as follows: About 12:30 a.m., January 3, 1927, Weinrich was on his way to start his nightly chores at appellee's place of business. After he had entered the yard back of the building and was within

8 or 10 feet of the rear door of the store he heard footsteps behind him and immediately turned away from the walk with the intention of going across the yard and returning to the alley when he was stopped by a man pointing a gun at him. A second man immediately came up, carrying a revolver, and ordered him to unlock the door. Being unable to do so on account of nervousness, one of the men took the keys from his person and unlocked the door. He was then compelled to enter the store and to turn on the lights in the rear of the premises. He was then bound and locked in the basement where he remained until about 8 o'clock in the morning. In the meantime, the robbers opened the desk in the store and took the money.

The store had been locked for the night by the son of plaintiff about one-half hour before the robbery. No one was left therein.

It is true, as argued by appellee, equivocal expressions in an insurance policy are interpreted most strongly against the insurer, and where doubt exists will be liberally construed in favor of the insured. But as said in *Crosse v. Knights of Honor,* 254 Ill. 80, 86, that rule "does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists," and it is the function of the court to construe and enforce the contract as it is written. (*Imperial Fire Ins. Co. v. Coos County,* 151 U. S. 452; C. J. 32, par. 258, p. 1148.) Such doctrine will not be applied to enforce liability contrary to an express provision of the policy in unambiguous language clearly intended to limit it. That the provision in question which makes one of the conditions of liability that the property taken by the robber from within the premises shall be "while at least one custodian is on duty therein" is not only not ambiguous but clearly contemplates that the custodian must not only be present but be on duty

within the premises when the robbery takes place. We think it is too clear for discussion that Weinrich was not on duty within the premises at the time of the robbery. The purpose of the provision unquestionably was to have the custodian present in the line of his duty and thus presumably in a situation to prevent or give notice of the robbery.

That there was a robbery within the premises and property taken of the kind which would render the insurer liable if at the time thereof the custodian was on duty within the premises, is not open to question. But while at the time of the robbery he was within the premises, it cannot be said that he was then "on duty." It was not enough that he intended to be on duty, or would have been had he not been deprived of his freedom before and after he entered the building where his duties as such were to be exercised. Had he been already in the building on duty before being deprived of his freedom and brought therein under duress, a different state of facts would be presented. But the provision in question plainly contemplates that he should be in the building in the exercise of his duty or in a position to exercise it at the time of the robbery. But he had been deprived of his freedom and power to exercise such duty from the time he came under the control and domination of the robbers outside of the building until he was released several hours afterwards. Under that state of facts we do not think that it can reasonably be said he was "on duty," within the intendment of the policy, when the robbery took place. In that respect the facts are no different than if the robbers had bound and left him in his home, taken the keys from him, and then had entered the premises and taken the property. Mere intention on his part to enter the premises and engage in his duties was not a compliance with the requirement of being on duty within them.

Interpreting the phrase "present on duty," it was held in *H. & S. Pogue Co. v. Fidelity & Casualty Co.*, 299 Fed. Rep. 243, that it includes "not only physical or bodily presence at the place, but a certain amount of freedom for the performance of duties." The policy in that case required the presence of two watchmen. One only was present when the entrance to the building by the robbers was effected. He was at once bound, blindfolded and tied to a chair. When the other watchman appeared he was likewise bound and tied. The court said that at no time were there two employees of the plaintiff present at the store, "who were possessed of freedom of movement or capable in the slightest degree of performing their regular duties," and that the purpose of the requirement of the presence of two employees was clearly defeated if the one had been wholly deprived of his freedom and volition before the other arrived. The principle on which the decision rests applies here. That compliance with the provision in section (E), aforesaid, is a condition precedent to the right to recover and manifestly material to the risk is not questioned. The assured was bound to show that he came within the terms of the policy he had accepted. *(Wakem & McLaughlin, Inc. v. Royal Ind. Co.*, 241 Ill. App. 427; *Imperial Fire Ins. Co. v. Coos County, supra;* C. J. Vol. 32, p. 1291, sec. 517.)

Appellee cites an opinion rendered by the Appellate Court of the Third District at the April Term, 1929, where an employee of the insured having charge and control of the store and property, was taken at night from his house by a bandit to the store and compelled to open up the safe of his employer. The policy in that case required that the robbery should be within the premises and inflicted by violence or the fear thereof upon the custodian having "actual care and custody of the property at the time." The court held

that under the circumstances the custodian at the time of the robbery was in the premises and had the actual care and custody of the property taken. While the provision in the policy on which the case turned is not like that in question here, yet so far as the opinion is deemed applicable we cannot agree with it. In our judgment to be "on duty" implies that one is in the place and in a position to perform it. At the time of the robbery that cannot be said to be the fact in this case.

Accordingly the judgment will be reversed with a finding of fact.

*Reversed with a finding of fact.*

SCANLAN, J., concurs;

GRIDLEY, J., dissents.

Finding of fact: We find that there was no custodian on duty within the premises at the time of the robbery in question.