**PILOT FREIGHT CARRIERS, Inc. v. FIDELITY–PHENIX FIRE INS. CO.**

Civ. A. No. 351.

United States District Court
M. D. North Carolina,
Winston-Salem Division.

June 28, 1951.

York & Boyd, Greensboro, N. C., Womble, Carlyle, Martin & Sandridge, Winston-Salem, N. C., for plaintiff.

Wharton, Poteat & Wharton, Greensboro, N. C., for defendant.

HAYES, District Judge.

The plaintiff is a common carrier of freight by motor truck in inter-state commerce and carried with defendant insurance against loss by theft of its cargo. It is conceded that a trailer load of cigarettes valued in excess of $50,000 was stolen from plaintiff near Reynolds Tobacco Company's Lackawanna Warehouse in Jersey City. Defendant denies liability on account of an alleged breach of a condition of the policy by the plaintiff.

The insured was required by the terms of the contract to install and maintain the Babaco warning system, including the Parker device. When a trailer was loaded, its doors were to be sealed in such a way that the doors could not be opened without sounding an automatic alarm unless the lock was opened by a key. Thus the cargo of freight could not be taken out of the trailer by a thief without sounding an alarm.

The Parker device is very different and the object is to protect the trailer against theft. This device is attached to the trailer from underneath in front of the rear door, with an attachment manipulated by a key which turns it to the "On" position or to the "Off" position. When it is in the "On" position an alarm begins to sound on the movement of the trailer and continues as long as the trailer continues to move. Thus a thief could not pull the trailer off without an alarm which would attract attention and promote the arrest of the thief. The switch was operated by the key and was incapable of operation from the cab of the tractor.

The policy contained a warranty that the insured would not leave the tractor-trailer parked unattended without having the Parker device in the "On" position. In paragraph 6 is this clause: "Failure of the insured to comply with any of the foregoing conditions precedent in any instance shall render policy null and void as respects theft coverage for vehicle."

The defendant contends that the requirement is a condition precedent and voids the policy as to this loss whereas the plaintiff contends it is a mere warranty in which case the defendant would be required to show causal connection.

The tractor-trailer was moving from plaintiff's terminal in Hoboken, N. J., to the

Lackawanna Warehouse in Jersey City on the day of theft. When the driver approached the warehouse he stopped the vehicle on the side of the street behind the traffic in front of him and went across the street to drink a cup of coffee. He then went to the gate to get his admission card for his cargo and then came to his tractor, opened the cab door and got in. He discovered a man on the other end of the seat who pointed a pistol at the driver and forced the driver to drive the cargo into another section of the city where he was compelled to get into an automobile in which he was held captive for several hours. The tractor-trailer was recovered the next day in New York City minus the cigarettes.

In the trial of the case, the court assumed that the tractor-trailer was parked unattended without having the Parker device in the "On" position. However, at no time was the driver more than approximately 300 feet from the vehicle and virtually in sight of it at all times. Whether stopping on the side of the street due to congested traffic of trucks in front of him constitutes parking within the meaning of the policy was likewise assumed.

The movement of the trailer did not occur until the driver returned to it. It is manifest that having obtained his admission card, he entered the tractor to drive it into the warehouse to unload it. The finding of the jury warrants this assumption. The vehicle was not unattended after the driver returned. It is important to note that the Parker device was not required to be in the "On" position except when the vehicle is parked unattended. Before the policy could become void for a failure to comply with this clause two things are essential: the parking of the vehicle and unattended. Parking the vehicle would not be enough if it were attended by its operator. There is no evidence to show or circumstance proven to warrant an inference that the driver knew or had any reason to believe that a thief was in his cab. Certainly no force was employed to bring him back to the truck which he had left there a few minutes before. If he was there voluntarily to drive the unit into the warehouse, how can it be said the vehicle was

unattended? And if it was attended, it was not necessary to have the device in the "On" position.

The evidence shows that the driver of the tractor who was required to carry a key to the Parker device would be required to go to the rear end of the trailer to turn the device from the "On" position to the "Off" position before he could drive the unit into the warehouse. If he had parked the tractor-trailer and had left the Parker device in the "On" position, it seems certain that he would have gone to the rear end of the trailer and turned the Parker device off before getting into the cab to drive the unit into the warehouse. It is inconceivable that he would have entered the warehouse sounding the alarm. With this in mind the court instructed the jury: "(a) If you find from the evidence in this case that Sinno, the driver of the truck, came back to the truck with the intention of driving the tractor-trailer into the warehouse at Lackawanna and that he acted voluntarily and in the performance of his duties in that particular, that is, if in the course of his duty as a truck driver, he came back to the truck and started to get in it with the intention of driving it into the warehouse there to unload it for his employer, the Pilot Freight Carriers, and if you further find from the evidence up to that point that he was acting voluntarily and for the purpose of carrying out his employer's orders to take the tractor-trailer to that warehouse and unload it, the court instructs you that at that point, if you find that to be true by the greater weight of the evidence, then the driver of the truck would be in attendance upon the truck within the meaning of this policy."

It is conceded that this is a North Carolina contract and controlled by the law of this state. The court's jurisdiction arises from diversity of citizenship. This court endeavored to follow the law as enunciated in Cottingham v. Maryland Motor Car Ins. Co., 168 N.C. 259, 84 S.E. 274, L.R.A. 1915D, 344, to the effect that where the terms of the policy have been breached, the insured will not be barred from recovering under the policy if at the time of the loss

the breach has been cured, or no longer exists.

The court is unable to agree with the counsel for defendant that the robber got in the cab during the absence of the driver and was therefore in possession of the cargo of cigarettes and the subsequent actions of the driver were altogether due to the command of the robber. After the driver was seated in the cab he was undoubtedly under the control of the robber. But the theft of the cigarettes had not occurred then. Under the robber's plan, the truck driver was essential to the theft; the robber compelled the attendant to drive it away. A careful examination of Milkes v. U. S. Fidelity & Guaranty Co., 257 Ill. App. 65 and H. & S. Pogue Co. v. Fidelity & Casualty Co. of New York, 6 Cir., 299 F. 243 discloses a factual situation quite different from the instant case and they are therefore inapplicable.

It is unnecessary to discuss the other points presented by the defendant because the reasons above assigned indicate clearly that the defendant is not entitled to a judgment in its favor nor is the court warranted in setting aside the verdict of the jury.